IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 7, 2019

## STATE OF TENNESSEE v. DERRICK WILLIAMSON

**Appeal from the Circuit Court for Madison County**
**No. 17-627     Donald H. Allen, Judge**

_____

### No. W2018-01441-CCA-R3-CD

_____

The defendant, Derrick Williamson, appeals the Madison County Circuit Court's denial of alternative sentencing for his jury conviction of child abuse.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, and D. KELLY THOMAS, JR., JJ., joined.

George Morton Googe, District Public Defender; and Gregory D. Gookin, Assistant District Public Defender, for the appellant, Derrick Williamson.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Jody Pickens, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Madison County Grand Jury charged the defendant, Derrick Williamson, with one count of aggravated child abuse arising out of injuries suffered by the victim, K.C.,[1] while in the care of the defendant.

At trial, the State's evidence showed that, on the night of May 11, 2017, Destinee Cole, the victim's mother, left the two-year-old victim and his seven-year-old brother in the care of the defendant at her apartment for approximately 45 minutes. When she left the apartment, both of the children were in bed, but when she arrived home

_____

[1]    To protect the anonymity of the minor victim, we will refer to him by his initials.

she found the victim crying, and he screamed and told her stop when she touched him. When she removed the victim's diaper, she saw that "he had bruises all in his pelvic area" and "blood streaks in his diaper." The victim also had swelling and bruising on his body. Ms. Cole called her mother, Katrena Howard, who arrived a short time later and found the victim with "injuries around his little private boy parts" and "on the front of him," "lashes" on his back, and "big gashes across his buttocks."

Upon arrival at the scene, Jackson Police Department officers observed the victim with visible bruising and injuries consistent with the victim's being hit with a belt. They saw what appeared to be blood on a wall and recovered a belt that also had what appeared to be wet blood on it. The victim was transported to the hospital by an ambulance. A medical examination revealed that the victim suffered "extensive" injuries. The jury saw numerous photographs showing bruising, swelling, and other injuries all over the victim's body. For one to two months following the incident, the victim limped, was "very sore to the touch," and, at the time of trial, still suffered from back and stomach pain and insomnia.

During an interview with Jackson Police Department Officer Jay Stanfill, the defendant gave a written statement, explaining that he arrived at Ms. Cole's apartment to find the children asleep in a bedroom. A short time later, the victim began crying, and the defendant took him from the bedroom to change his diaper. Because the victim was trying to get up, the defendant explained that he "grabbed a black belt" and "spanked him maybe twice." He stated that, because the victim was moving around, he "may have caused those injuries" but that he "didn't intend to hurt him." The victim's mother arrived home at that time, saw the victim crying, and "was high and exaggerating" the situation.

The defendant's brother, Montreal Williamson, testified on the defendant's behalf that the defendant and Ms. Cole had been roommates, and the defendant helped her with the children. He explained that, on the night of the incident, the defendant left the apartment at the same time that Mr. Williamson and Ms. Cole did, and the children were left in the care of a babysitter. When Mr. Williamson and Ms. Cole returned to the apartment, the defendant was there, and the babysitter had left. Ms. Cole entered the apartment ahead of Mr. Williamson, and when he came in, Ms. Cole was asking why the victim was crying. After Ms. Cole's mother arrived, the defendant and Mr. Williamson left "because it was a little chaos going on." Mr. Williamson testified that Ms. Cole was "under the influence of drugs" and "was kind of buzzed up a little bit" that night.

The defendant testified consistently with the statement he gave to police. He stated that he had known Ms. Cole for several months prior to the incident, and, for a

period of about four months they had been roommates, during which time he helped her care for her children. On the night in question, he arrived at Ms. Cole's apartment and saw "a young teenage female on the balcony on the phone." The teenager let him into the apartment and told him that the children were asleep. A few minutes later, while changing the victim's diaper, the victim "got a little agitated," and, while the victim was naked, the defendant hit him with a belt "out of frustration." The defendant contended that he did not intend to hurt the victim; rather, he "was just simply trying to get him to calm down." The defendant testified that when Ms. Cole returned to the apartment, the victim began whining, and Ms. Cole accused the defendant of molesting the victim. Ms. Cole's mother then came over to the apartment, said she was going to call the police, and threatened to have "some guys" "come over to enforce the situation," at which point the defendant left.

The jury convicted the defendant of the lesser-included offense of child abuse of a child eight years of age or less and imposed a $5,000 fine.

At the July 2018 sentencing hearing, Katrena Howard, the victim's grandmother, testified that the victim had lived with her off-and-on since the incident. She recounted the victim's injuries, stating that she had to put medicine on the victim's buttocks and genitals, and the victim "couldn't sit on his bottom for three months" after the abuse. The victim also had difficulty sleeping at night. She emphasized that the defendant had not taken responsibility for anything more than "whipping" the victim. She stated, "[I]t was more than a whipping. It was a beating."

A presentence investigation report was exhibited to the hearing. The State asked that the defendant receive the maximum four-year sentence due to his criminal history, his prior non-compliance with terms of release into the community, and his being on probation when he committed the present offense. The defendant requested a reduction of the fine imposed by the jury and a sentence of time-served, emphasizing that he did not have any violent offenses in his criminal record and that he had not intended to harm the victim in this case. Alternatively, the defendant asked that he be granted some form of alternative sentencing.

In sentencing the defendant, the trial court considered the evidence at trial and the sentencing hearing, the principles of sentencing, the arguments of counsel, the nature and characteristics of the conduct, mitigating and enhancement factors, and the defendant's potential for rehabilitation and treatment. The court found several enhancement factors, including the defendant's prior criminal history, prior drug use, failure to comply with release into the community, and the severity of the victim's injuries. The court found the defendant's employment history as a mitigating factor. The

court gave "great weight" to the defendant's criminal history and his prior non-compliance with periods of release into the community and sentenced the defendant to serve four years as a Range I offender in the Tennessee Department of Correction. The court reduced the fine to $1,000.

In denying the defendant any form of alternative sentencing, the trial court found that the defendant was "not a suitable candidate for alternative sentencing," in part, because he left the scene without rendering aid to the injured victim. The court further found that a grant of alternative sentencing "would unduly depreciate the seriousness of this offense" and that "confinement is particularly suited to provide an effective deterrent to others who are likely to commit this same type offense."

The defendant timely appeals the imposition of a fully-incarcerative sentence, arguing that his prior convictions "were not consistent" and that he "usually completed probation successfully." He also contends that his leaving the scene after beating the victim was because he feared for his safety and that he was otherwise cooperative with law enforcement. The State contends that the trial court did not err.

Our supreme court has adopted an abuse of discretion standard of review for sentencing and has prescribed "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise* 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). The abuse-of-discretion standard of review and the presumption of reasonableness also applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Although the trial court must consider the defendant's potential for rehabilitation in determining whether to impose an alternative sentence, see T.C.A. § 40-35-103(5), "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation" are not considered favorable candidates for alternative sentencing, *id.* § 40-35-102(5)-(6)(A).

That being said, the imposition of an effective four-year sentence in this case mandated the trial court's considering probation as a sentencing option. *See* T.C.A. § 40-35-303(a) ("A defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less . . . ."). Traditionally, the defendant has born the burden of establishing his "suitability for full probation." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* T.C.A. § 40-35-303(b). Such a showing required the defendant to demonstrate that full probation would "subserve the ends of justice and the best interest[s] of both the public and the defendant." *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting *Hooper v. State*, 297 S.W.2d 78, 81 (1956), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000)).

When a trial court orders confinement and therefore rejects any form of alternative sentencing such as probation, split confinement, or periodic confinement, it must base the decision to confine the defendant upon the considerations set forth in Code section 40-35-103(1), which provides:

> (1) Sentences involving confinement should be based on the following considerations:
>
> > (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> >
> > (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> >
> > (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant; . . . .

T.C.A. § 40-35-103(1).

In determining the manner of service of the defendant's sentence, the trial court pointed to the defendant's criminal history, including numerous drug offenses, his prior violations of probation, the extensive pain and injury he inflicted on the two-year old victim, and the defendant's leaving the scene before law enforcement officers arrived. The record supports these findings. The presentence investigation report shows 12 prior

convictions, including alcohol- and drug-related offenses and theft. The evidence at trial showed that the victim suffered significant pain when touched, bruising and swelling all over his body, and injury to his buttocks and genitals. Finally, although the defendant argues that he left the scene because he feared for his safety, he admitted to leaving the scene before police arrived. Given the severity of the injuries to the victim, the defendant's fleeing the scene without attempting to render aid, and his refusal to acknowledge his role in inflicting such severe injuries, the record supports the imposition of confinement to "avoid depreciating the seriousness of the offense." *See* T.C.A. § 40-35-103(1)(B).

Accordingly, we discern no error in the trial court's decision to impose a fully-incarcerative sentence, and we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE